UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_3/29/2024__
```

-----------------------------------------------------------------------X

KARMAGREEN, LLC,  :

          Plaintiff,  :

      -v-  :

SUPER CHILL CBD PRODUCTS et al.,  :

          Defendants.  :

-----------------------------------------------------------------------X

23-cv-6073 (LJL)

MEMORANDUM AND
ORDER

LEWIS J. LIMAN, United States District Judge:

Karmagreen, LLC ("Plaintiff") brings this action against Super Chill CBD Products ("Super Chill") and Rajinder S. Singh ("Singh") (collectively, "Defendants") alleging patent infringement, trademark infringement, unfair competition, and copyright infringement.  Dkt. No. 1 ("Compl.").  Defendants have not appeared in or answered the action.  Plaintiff obtained a Certificate of Default from the Clerk of Court, Dkt. No. 16, and now moves for default judgment against Defendants, Dkt. No. 20.

For the reasons discussed below, the motion for default judgment is granted.

## BACKGROUND

By defaulting, Defendants have admitted the well-pleaded allegations of the complaint. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).  The complaint alleges as follows.

Plaintiff is a Delaware limited liability company with its principal place of business in Florida. Compl. ¶ 3. Among other products, Plaintiff sells tianeptine-based[1] dietary supplements under the product line "Tianaa" and owns a range of intellectual-property rights for Tianaa including six United States Patents, five U.S. general trademark registrations, and three copyright registrations. *Id.* ¶¶ 12–16; Dkt. No. 1-7. Defendant Super Chill is a New York corporation with its principal place of business in New York, New York that sells "dietary supplements known as TIA POWER." Compl. ¶¶ 1, 4. Defendant Singh is a New York resident who is the sole owner and operator of Super Chill. *Id.* ¶¶ 5–6.

Plaintiff alleges that Defendants "have engaged in blatant and willful copyright, patent and trademark infringement through the copying of Karmagreen's product packaging and artwork, copying of the product brand/trademark, and copying and practicing of the methods of manufacturing the product." *Id.* ¶ 2. Specifically, Plaintiff alleges that "Defendants sell their dietary supplements with labels that are substantially similar to the copyright-protected TIANAA® labels." *Id.* ¶ 79. Plaintiff sets forth photographs of its own products as well as those of Defendants to illustrate the similarities in the product design and labeling. *Id.* ¶¶ 2, 62, 63, 79, 87. Plaintiff also alleges that Defendants' composition and manufacturing of its products infringes on each of its six patents by—among other things—using the same chemical compounds in combination with each other. *Id.* ¶¶ 65–75.

---

[1] The FDA describes tianeptine as "a substance that does not meet the statutory definition of a dietary ingredient and is an unsafe food additive," warning that it "is aware of several serious adverse event reports associated" with the substance and that "[c]onsumers may inadvertently find themselves addicted" to it. *Tianeptine in Dietary Supplements*, FDA (Feb. 22, 2023), https://www.fda.gov/food/information-select-dietary-supplement-ingredients-and-other-substances/tianeptine-dietary-supplements.

## PROCEDURAL HISTORY

Plaintiff filed this action on July 14, 2023, asserting claims for patent infringement, trademark infringement, unfair competition, and copyright infringement.  Compl. ¶ 2.  Plaintiff seeks (1) declaratory relief that Defendants infringed on Plaintiff's patents, copyrights, and trademarks; (2) a permanent injunction enjoining Defendants from infringing on Plaintiff's intellectual property rights; and (3) statutory damages pursuant to 15 U.S.C. § 1117(c) and 17 U.S.C. § 504(c).  *See* Compl. Prayer for Relief.  On July 21, 2023, Plaintiff caused Defendant Super Chill to be served and filed a proof of service on July 31, 2023.  Dkt. No. 13.  On July 27, 2023, Plaintiff caused Defendant Singh to be served and filed a proof of service on July 31, 2023.  Dkt. No. 12.  After Defendants failed to answer, appear, or otherwise respond to the complaint by the deadline for doing so, Plaintiff sought and obtained from the Clerk of Court a Certificate of Default against Defendants.  Dkt. Nos. 15, 16.  On December 11, 2023, Plaintiff moved for default judgment against Defendants pursuant to Federal Rule of Civil Procedure 55.  Dkt. No. 20.  On January 11, 2024, Plaintiff served Defendants with the Notice of Motion and papers in support of the motion for a default judgment.  Dkt. Nos. 24, 25.  Defendants have not responded to the motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default and the entry of a default judgment. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Mickalis Pawn Shop, LLC*, 645 F.3d at 128; *see* Fed. R. Civ. P. 55(a).  The second step, entry of a default judgment, "converts the defendant's admission of liability into a final

judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings. *Mickalis Pawn Shop, LLC*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b). Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law. *See Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a complaint, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action." *Id.* (citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Therefore, this Court is "required to determine whether the [plaintiff's] allegations are sufficient to establish the [defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 85 (2d Cir. 2009).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Group Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019) (Nathan, J.). In addition to considering the Plaintiff's complaint, "the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit . . . , or matters of which judicial notice may be taken." *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 570 (S.D.N.Y. 2013) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *see also Gray v. Wesco Aircraft Holdings,*

*Inc.*, 454 F. Supp. 3d 366, 383 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021) (summary order).

A default judgment entered on well-pleaded allegations does not reach the issue of damages, and Plaintiff "must therefore substantiate its claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd* 691 F. App'x 8 (2d Cir. 2017) (summary order). To determine the amount of damages that should be awarded on a default judgment, Federal Rule of Civil Procedure 55(b)(2) "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (internal quotation marks and citation omitted). And "[w]here, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes no submission in opposition and does not request a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs." *Id.*

## DISCUSSION

### I.   Jurisdiction

Plaintiff brings claims under federal patent, copyright, and trademark law, and the Court accordingly has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. § 1331, and *id.* § 1338(a).  The Court also has jurisdiction over Plaintiff's unfair competition claim brought under New York common law pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a).

The Court has personal jurisdiction over both of the Defendants.  The complaint alleges that Defendant Super Chill is a New York corporation with its principal place of business located in this District and has committed patent, trademark, and copyright infringement and unfair competition in this District.  Compl. ¶ 8.  It also alleges Defendant Singh is a New York resident

who operates Super Chill and has committed patent, trademark, and copyright infringement and unfair competition against Plaintiff in New York, with sufficient contacts with this District. *Id.* ¶ 9.

## II.    Liability

### A.    Trademark Infringement

Plaintiff seeks default on its claim of trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1116(d), 1117(b)-(c), and 1125(a).  Dkt. No. 22, at 8–10.  The Lanham Act holds liable any person who, without the consent of the registrant of a mark, uses in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark—or reproduces, counterfeits, copies, or colorable imitates a registered mark and applies such to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used—in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. 15 U.S.C. §§ 1114(1)(a)-(b).

To establish liability under the Lanham Act, a plaintiff must demonstrate that (1) it has a valid trademark entitled to protection and (2) the defendant's imitation of the trademark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.  *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020).  To establish the former, "[t]he Lanham Act treats trademark registration as 'conclusive evidence of the validity of the registered mark.'"  *Id.* at 84 n.4 (quoting 15 U.S.C. § 1115).  To establish the latter likelihood-of-confusion prong, the Court considers eight factors articulated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961):

> (1) the strength of the trademark; (2) the degree of similarity between the plaintiff's mark and the defendant's allegedly imitative use; (3) the proximity of the products and their competitiveness with each other; (4) the likelihood that the plaintiff will "bridge the gap"

by developing a product for sale in the defendant's market; (5) evidence of actual
consumer confusion; (6) evidence that the defendant adopted the imitative term in bad
faith; (7) the respective quality of the products; and (8) the sophistication of the relevant
population of consumers.

*Tiffany & Co.*, 971 F.3d at 84–85 (citing *Polaroid*, 287 F.2d at 495; *Starbucks Corp. v. Wolfe's
Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009)). "The *Polaroid* factors are to be weighed
holistically in determining whether the party seeking to establish an infringement claim has
demonstrated the probability of confusion of a substantial number of consumers of the relevant
class." *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 177 (S.D.N.Y. 2022)
(quoting *24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC*, 277 F. Supp. 2d 356, 366
(S.D.N.Y. 2003)). In evaluating these factors, the "ultimate question" for the Court is "whether
consumers are likely to be confused." *Nabisco Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d
Cir. 2000) (internal quotation marks omitted).

Plaintiff has established both elements as to each Defendant. Under the first prong,
Plaintiff alleges it is the owner of—and includes copies of registration certificates for—U.S.
Trademark Registration Nos. 5386231 (Tianaa), 5405978 (Tianaa White), 5405977 (Tianaa
Red), 5405976 (Tianaa Green), and 5386232 (Tianaa Ex) (collectively, "TIANAA Marks").
Compl. ¶¶ 44-49 & Exs. 7-11. Under the second prong, Plaintiff has established under the eight
*Polaroid* factors that the marks on Defendants' products are likely to cause confusion to
consumers because they are demonstrably imitative of Plaintiff's trademarks. First, Plaintiff's
marks are distinctive because they include arbitrary designs "that do not communicate any
information about the product either directly or by suggestion." *Star Indus., Inc. v. Bacardi &
Co. Ltd.*, 412 F.3d 373, 385 (2d Cir. 2005). These include colored bands on the top and bottom
of the labels, a hexagonal shape surrounding font, and a flower. *See* Compl. ¶ 2. Arbitrary
marks "are the strongest," compared with generic, descriptive, or suggestive marks. *Star*

*Industries*, 412 F.3d at 385.  Second, the design of Defendants' products is significantly similar to Plaintiff's Tianaa products.  *Id.* ¶¶ 86–87.  "The similarity of the marks factor requires the court to look beyond the text of the mark and 'analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers.'"  *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 254 (S.D.N.Y. 2022), *aff'd*, 2024 WL 1152520 (2d Cir. Mar. 18, 2024) (summary order) (quoting *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 117 (2d Cir. 2006)).  The fonts, graphic designs, and coloring of the product labels are nearly identical.  Moreover, Defendants' products use the first three letters of Plaintiff's TIANAA word mark as their title (TIA).  Third and fourth, Defendants' products are nearly identical and compete against each other as dietary supplements with similar sales channels and marketing, leaving no gap between the products that Plaintiff can bridge.  *See* Compl. ¶¶ 54, 66. Fifth, Plaintiff has not alleged actual consumer confusion, but "such evidence is not required for a showing of likelihood of confusion."  *Heisman Trophy Tr. v. Smack Apparel Co.*, 637 F. Supp. 2d 146, 156 (S.D.N.Y. 2009), *aff'd*, 379 F. App'x 12 (2d Cir. 2010) (summary order).  Sixth, the obvious imitation of Plaintiff's words, fonts, images, and designs allows for the inference of Defendants' bad faith because the combination of these attributes into the imitative products could not have happened but for an intentional effort to deceive consumers.  *See Diesel S.p.A. v. Diesel Power Gear, LLC*, 2022 WL 956223, at *12 (S.D.N.Y. Mar. 30, 2022) (explaining that bad faith can be found where constructive knowledge of a mark is "accompanied by similarities so strong that it seems plain that deliberate copying has occurred" (citations omitted)).  Seventh, Plaintiff has not alleged in its Complaint a demonstrable difference in quality between it and

Defendants' products.  Lastly, Plaintiff's consumers are the general public and they do not have any special sophistication within the dietary supplement market.

On balance, these factors establish that consumers are likely to be confused by Defendants' imitation of Plaintiff's marks. Accordingly, the Court grants judgment in favor of Plaintiff for trademark infringement.

### B.  Copyright Infringement

Plaintiff alleges that "Defendants have infringed and continue to infringe [Plaintiff's] copyrights by reproducing, adapting, publishing, and displaying the Copyrighted Works, in whole or part, and creating derivatives of the Karmagreen Copyrighted Works" in violation of the Copyright Act, 17 U.S.C. §§ 106 & 501.  Compl. ¶ 203.  "The Copyright Act grants the owner of the copyright the exclusive right to authorize the reproduction, distribution, and preparation of derivatives of the owner's work."  *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 424 (S.D.N.Y. 2018).  The Court concludes that Plaintiff's allegations of copyright infringement in violation of 17 U.S.C. § 501 are well-pled and sufficient to establish liability.

To prevail on a copyright infringement claim, a plaintiff must demonstrate: "(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  "A certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright."  *Id.* at 51 (citing 17 U.S.C. § 410(c)).  Under the first prong, Plaintiff has sufficiently alleged it is the sole owner of works pertaining to its Tianaa Green, Tianaa Red, and Tianaa White products, which are covered respectively by U.S. Copyright Registration Nos. VA0002151939, VA0002151376, and VA0002151942 (collectively, "Karmagreen Works"). Compl. ¶¶ 16–23, 79–81.  These copyrights protect the respective labels Plaintiff's Green, Red,

and White versions of its Tianaa product.  *Id.* ¶ 79.  The labels include a consistent set of colors, fonts, shapes, design flourishes, and decorative lines.  *Id.* ¶ 80.

To satisfy the second prong, "a plaintiff must demonstrate that: '(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work].'"  *Spin Master*, 463 F. Supp. 3d at 369 (quoting *Yurman Design, Inc. v. PAJ Inc.*, 262 F.3d 101, 110 (2d Cir. 2001)).  Because "direct evidence of copying is seldom available, a plaintiff may establish copying circumstantially."  *Jorgensen*, 351 F.3d at 51.  "[P]roof that the defendants had access to the copyrighted work and similarities that are probative of copying between the works" can suffice to demonstrate actual copying.  *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999).  "Access may be established directly or inferred from the fact that a work was widely disseminated or that a party had a reasonable possibility of viewing the prior work."  *Boisson v. Banian, Ltd.*, 273 F.3d 262, 270 (2d Cir. 2001).  Here, access can be inferred from the fact that Plaintiff's products are widely distributed, *see* Compl. ¶ 54, and Defendants had a "reasonable opportunity to view" Plaintiff's work before creating their own, *Gaste v. Kaiserman*, 863 F.2d 1061, 1067 (2d Cir. 1988); *see Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 328 (S.D.N.Y. 2021).

Plaintiff also satisfies the second element necessary to prevail on a copyright infringement claim—substantial similarity.  To establish a "substantial similarity" between two products, the Plaintiff must show that an "ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same."  *Hamil*, 193 F.3d at 100 (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) (L. Hand, J.)).  A side-by-side comparison of Plaintiff's and Defendants'

products reveals a clear substantial similarity.  Plaintiff's protected design marks include "a number of distinctive features including the hexagon shape, the yellow and green flower at the top of the hexagon, the bold text in the middle of the hexagon, and the accompanying design flourishes and decorative lines."  Compl. ¶ 43.  The Complaint contains photographs demonstrating the obvious similarities between Plaintiff's and Defendants' works.  *Id.* ¶ 2.  Both products include a hexagonal shape surrounding nearly identical all-caps letters in a thick white font.  Inside each of the labels' hexagons are a lotus-flower design near the top and the name of a color below the thick, all-caps letters.  Both labels have colored borders on the top and bottom of them.  These near-identical characteristics would cause the ordinary observer confusion and he would likely overlook the minor differences between the products.  *See Hamil*, 193 F.3d at 100; *Lang*, 949 F.2d 576, 582 (2d Cir. 1991) (explaining that where the products "serve the same purpose, fall within the same general class, or are used together, the use of similar designations is more likely to cause confusion"); *see also Essie Cosmetics, Ltd. v. Dae Do Int'l, Ltd.*, 808 F. Supp. 952, 959 (E.D.N.Y. 1992) ("Even different labels on nearly identical bottles may cause confusion.").  Accordingly, Plaintiff has successfully demonstrated copyright infringement, and default judgment is granted in its favor for these claims.

### C.    Patent Infringement

Plaintiff additionally alleges Defendants are liable for both direct and indirect infringement of Plaintiff's patents in violation of the Patent Act, 35 U.S.C. § 271.  Under the Patent Act, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271(a).  There are "five elements of a patent infringement pleading, to (i) allege ownership of the patent, (ii) name each defendant, (iii) cite the patent that is allegedly infringed, (iv) state the means by which the

defendant allegedly infringes, and (v) point to the sections of the patent law invoked." *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1362 (Fed. Cir. 2013) (citing *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000)); *see also Display Technologies, LLC v. Leantegra, Inc.*, 2022 WL 354667, at *3 (S.D.N.Y. Feb. 7, 2022).

Plaintiff has satisfied each of the five elements required to establish Defendants' liability for patent infringement.  First, Plaintiff alleges it owns six patents pertaining to its Tianaa product line: United States Patent Nos. 10,624,902, 11,324,754, 11,337,986, 11,344,560, 11,324,756, and 11,318,147 (collectively, "Patents-in-Suit").  Compl. ¶¶ 14–15; Exs. 1–6.  Each of the patents relates to the composition and manufacture of dietary supplements containing varying combinations of tianeptine, sakae naa, and other chemical compounds.  Dkt. No. 1-1–1-6  The '902 patent pertains to a "dietary supplement can consisting of tianeptine and sakae naa," while the remaining patents deal with "a method of forming a dietary supplement" comprising different combinations of the aforementioned ingredients.  Dkt No. 1-1.  Second, Plaintiff identifies the two Defendants: Super Chill as the business selling the infringing products, and Singh as the owner and operator of said business.  Compl. ¶¶ 4, 6.  Third, Plaintiff specifically cites to the aforementioned patents as the ones being infringed, *id.* ¶¶ 14, 26, 29, 32, 35, 38, 41; Dkt. Nos. 1-1–1-6.  Fourth, Plaintiff states the means by which Defendants infringed each of its six patents.  Compl. ¶¶ 64–75.  Plaintiff cites to specific elements of its patent claims for each patent and alleges how that element is present in Defendants' products.  *Id.*  For example, Plaintiff alleges that Defendants' products contain the same combinations of chemical compounds that Plaintiff's products contain, including tianeptine, sakae naa, stearate, silicate, CDP choline, and Alpha GPC.  *See, e.g.*, *id.* ¶ 65.  The images of Defendants' labels included in the Complaint support these allegations.  *Id.* ¶¶ 62–63.  Finally, Plaintiff has specified that

Defendants violated patent law 35 U.S.C. § 271.  *Id.* ¶¶ 92, 97, 103, 110, 115, 121, 128, 133, 139, 146, 151, 157, 164, 169, 175, 182, 187, 193.

Having satisfied all five elements, default judgment is granted in Plaintiff's favor for direct patent infringement claims under 35 U.S.C. § 271(a).  Because this Court finds Defendants liable for direct patent infringement under 35 U.S.C. § 271(a) for each of its six patents, it need not address Plaintiff's additional theory of indirect infringement.  *See* 35 U.S.C. § 271(b)-(c).

### D.      Unfair Competition

Lastly, Plaintiff asserts claims for unfair competition under the Lanham Act and New York common law.  An unfair competition claim under the Lanham Act requires the same showing as a trademark infringement claim that "(1) [plaintiff] owns a valid mark entitled to protection under the Lanham Act; (2) defendant used the protected mark in commerce, without plaintiff's consent; and (3) defendant's use of that mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods."  *Camelot Si, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 480 (S.D.N.Y. 2022) (quoting *Lopez v. Nike, Inc.*, 2021 WL 128574, at *4 (S.D.N.Y. Jan. 14, 2021)).  The "elements of an unfair competition claim under New York law are identical to the elements of an unfair competition claim under the Lanham Act, save that the plaintiff must also show bad faith by the infringing party."  *Fischer v. Forrest*, 286 F. Supp. 3d 590, 617 (S.D.N.Y. 2018), *aff'd*, 968 F.3d 216 (2d Cir. 2020) (internal quotation marks and citations omitted).

The Court's trademark-infringement holding above also leads to the conclusion that Plaintiff satisfied the elements for successful unfair competition claims under the Lanham Act and New York law.  *See Hamilton Int'l, Ltd. v. Vortic LLC*, 486 F. Supp. 3d 657, 669 (S.D.N.Y. 2020) ("The standard for a trademark infringement claim under 15 U.S.C. § 1114(1) is the same as the standard for an unfair competition claim under 15 U.S.C. § 1125(a).").  In addition to

finding that Plaintiff owns valid marks entitled to protection and Defendants' use of those marks in commerce was likely to cause consumers confusion, the Court also found as one of the eight *Polaroid* factors that Defendant acted in bad faith.  Having satisfied all the required elements, the Court finds Defendants liable for unfair competition and grants default judgment in Plaintiff's favor.

## III.    Statutory Damages

Plaintiff seeks statutory damages for copyright infringement in the amount of $450,000, consisting of the maximum statutory amount available: $150,000 for each of three infringed works.  Dkt. No. 22, at 13.  The Copyright Act provides three types of damages for plaintiffs who have been injured by copyright infringement: (1) actual damages, including the infringer's profits; (2) statutory damages "not less than $750 or more than $30,000 as the court considers just"; or (3) if the court finds that the infringement was willful, "a sum of not more than $150,000."  17 U.S.C. § 504(b)-(c).  Plaintiff may elect to recover statutory damages instead of actual damages.  *Id.* § 504(c).

"A copyright infringement is 'willful' within the meaning of Section 504(c)(2) if plaintiff shows '(1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights.'"  *Otto v. Hearst Commc'ns., Inc.*, 345 F. Supp. 3d 412, 435 (S.D.N.Y. 2018) (quoting *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)).  "The defendant's knowledge 'need not be proven directly but may be inferred from the defendant's conduct."  *Cawthon v. Zhousunyijie*, 2024 WL 1156073, at *7 (S.D.N.Y. Mar. 18, 2024).  "[C]ourts in this district have concluded that use of marks that are 'virtually identical' to the registered marks renders 'inescapable' the conclusion that the defendant's infringement and counterfeiting was intentional."  *WowWee*, 2019 WL 1375470, at *10 (internal citations

omitted).  Here, the Court concludes that Defendants' infringement was committed willfully.

Defendants' marks were "virtually identical" to Plaintiff's protected marks, as discussed above.

Plaintiff is thus entitled to damages in the range applicable to willful infringement under Section

504(c)(2).

A default judgment entered on well-pleaded allegations establishes a defendant's

liability, but it does not address damages.  Plaintiff "must therefore substantiate its claim for

damages with evidence to prove the extent of those damages."  *Hood v. Ascent Med. Corp.*, 2016

WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), report and recommendation adopted, 2016 WL

3453656 (S.D.N.Y. June 20, 2016), *aff'd*, 691 F. App'x 8 (2d Cir. 2017).  To determine the

amount of damages to award, the Court considers the following factors:

> (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the
> infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on
> the infringer and third parties; (5) the infringer's cooperation in providing evidence
> concerning the value of the infringing material; and (6) the conduct and attitude of
> the parties.

*Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).

Under the first factor, the Court already determined that Defendants' infringement was

willful, entitling Plaintiff to an award of statutory damages up to $150,000 per infringement.

Defendants' established willfulness weighs in favor of a high award of statutory damages in

order to "discourage wrongful conduct, as well as . . . provide reparation for injury."  *Broad*

*Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 197–98 (S.D.N.Y. 2016).

Under the second and third factors, Defendants' failure to appear has prevented the Court

from ascertaining the full extent of their profits and Plaintiff's losses.  Although "statutory

damages do not require the precise monetary quantification of injury," *Castillo v. G & M Realty*

*L.P.*, 950 F.3d 155, 172 (2d Cir. 2020), Plaintiff has submitted no evidence of the Defendants'

gains or Plaintiff's losses resulting from the infringement. *See, e.g.*, *Farrington v. Jewish Voice, Inc.*, 2022 WL 541645 (E.D.N.Y. Feb. 23, 2022). Nothing in the record enables the Court to find that profits were anything "more than *de minimis*." *Mordant v. Citinsider LLC*, 2019 WL 3288391, at *1 (S.D.N.Y. July 22, 2019). This lack of information renders these factors neutral. *Cf. Spin Master, Inc. v. Amy & Benton Toys & Gifts Co.*, 2019 WL 464583 at *6 (S.D.N.Y. Feb. 6, 2019) (finding that the defendants' default made it impossible to "meaningfully assess" the extent of expenses saved, profits reaped, or revenue lost); *see also WowWee Grp. v. Meirly*, 2019 WL 1375470, at *10 (finding that the factors assessing expenses saved, profits reaped, and revenue lost could not be evaluated); *Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc.*, 2016 WL 658310, at *4 (S.D.N.Y. 2016).

Under the fourth factor, "because the Court has approved a permanent injunction in this action, specific deterrence [] does not necessarily militate for a higher award." *WowWee*, 2019 WL 1375470, at *10. Accordingly, this factor is neutral.

The fifth factor—the infringer's cooperation—does not apply in the case of default judgment. *Hirsch v. Sell It Soc., LLC*, 2020 WL 5898816, at *4 (S.D.N.Y. Oct. 5, 2020); *see also Verch v. Blockchain Techs. Corp.*, 2021 WL 1198784, at *2 (S.D.N.Y. Mar. 30, 2021) ("The Court does not view [Defendants' default] as probative.").

Under the final factor, "the mere fact of a default should not increase the quantum of statutory damages," because defendants have a right to default "with the only consequence being that it has lost the ability to defend itself against the well-pleaded allegations of a complaint." *Spin Master*, 463 F. Supp. 3d at 374. With regards to Defendants' conduct, Plaintiff has not alleged that Defendants actively sought to mislead the court or conceal their infringing conduct. *Cf. Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 168 (S.D.N.Y. 1999). Regarding

16

Plaintiff's conduct, however, Plaintiff has failed to submit any evidence to assist the Court in determining the appropriate amount of statutory damages to award.  In its memorandum in support of the motion for default judgment, the primary rationale Plaintiff proffers in support of its amount requested is that Defendants' infringement was willful.  *See* Dkt. No. 22 at 13–14.  The additional reasons Plaintiff provides for a higher award are solely a necessary byproduct of Defendants' default (e.g., Defendants' failure to produce "evidence concerning the value of the infringing material").  *Id.* at 14.  "To the extent possible, statutory damages 'should be woven out of the same bolt of cloth as actual damages.'"  *Spin Master*, 463 F. Supp. 3d at 371 (quoting *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. Apr. 23, 2004)).  Without evidence of actual damages, this task is impossible.  "Indeed, the 'dearth of information that [P]laintiff has provided' has hampered the Court's ability to analyze these factors." *Bass v. Diversity Inc. Media*, 2020 WL 2765093, at *4 (S.D.N.Y. May 2020) (Nathan, J.) (quoting *Seelie v. Original Media Grp. LLC*, 2020 WL 136659, at *5 (E.D.N.Y. Jan 13. 2020)).

Considering all of the *Bryant* factors, the Court finds Plaintiff entitled to an award of statutory damages, but not the maximum amount.  Plaintiff requests the maximum statutory amount of $150,000 for each of its three protected works that were infringed, amounting to $450,000 in total.  17 U.S.C. § 504(c).  The Court evaluates the requested relief with "broad discretion to select the amount of damages award[ed] within the pertinent statutory range." *Parsons v. Bong Mines Entertainment LLC*, 2021 WL 931506, at *8 (E.D.N.Y. Feb. 18, 2021); *see also Cawthon*, 2024 WL 1156073, at *8.  While "courts in this circuit will sometimes consider the value of the infringed copyright in setting damages awards," Plaintiff has provided the Court with practically no basis to infer the value of its protected works.  *See Cawthon*, 2024 WL 1156073, at *9.  While the Court's determination that Defendants willfully infringed on

Plaintiff's works weighs in favor of a higher award, the Court is unable to justify awarding the maximum amount of statutory damages available based on Plaintiff's sparse evidentiary record. The Court therefore awards statutory damages in the amount of $50,000 for each protected work, amounting to $150,000 in total.[2]

## IV.    Permanent Injunction

In addition to statutory damages, Plaintiff also seeks a permanent injunction to prevent Defendant from further infringing on Plaintiff's patents, copyrights, and trademarks at issue in this case.  When a plaintiff has succeeded on the merits for patent, copyright, or trademark claims, as this Plaintiff has, the Court considers four factors to determine whether a permanent injunction is appropriate: "(1) that [the plaintiff] suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that the balance of hardships between the parties warrants a remedy in equity for the plaintiff; and (4) that the public interest would not be disserved."  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (applying the standard to a patent action); *see also U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 539 (S.D.N.Y.), *aff'd*, 511 F. App'x 81 (2d Cir. 2013) (summary order) (trademark); *Salinger v. Colting*, 607 F.3d 68, 77–78 (2d Cir. 2010) (copyright).

All of these factors counsel in favor of issuing the requested permanent injunction. First, Plaintiff has demonstrated that it has suffered an irreparable injury and, absent an injunction, will continue to do so as a result of Defendants' conduct.  Compl. ¶ 230.  The "threat of continuing

---

[2] Plaintiff seeks statutory damages only for its copyright claims and not for its patent, trademark, and unfair competition claims.  Because a "plaintiff seeking compensation for the same legal injury under different legal theories is of course only entitled to one recovery," the Court does not consider Plaintiff's other claims in its statutory damages analysis for copyright infringement. *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995); *see also McGraw Hill LLC v. Doe 1*, 616 F. Supp. 3d 316, 329 (S.D.N.Y. 2022) ("Duplicative recovery for the same injury is inappropriate.").

violations, as demonstrated by [Defendants'] default, qualifies as irreparable harm under the *eBay* standard." *Streamlight, Inc. v. Gindi*, 2019 WL 6733022, at *8 n.9 (E.D.N.Y. Oct 1, 2019) (quotation marks omitted), *report and recommendation adopted*, 2019 WL 6726152 (E.D.N.Y. Dec. 11, 2019); *Ideavillage Prod. Corp. v. Bling Boutique Store*, 2018 WL 3559085, at *5 (S.D.N.Y. July 24, 2018).  Plaintiff alleges that it lost not only profits but also suffered irreparable damage to its "reputation and good will."  Compl. ¶ 222.  Second, a "plaintiff has no adequate remedy at law where, absent an injunction, the defendant is likely to continue" its infringement.  *Pearson Educ., Inc. v. Vergara*, 2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010) (citation omitted).  A strong probability exists here that, absent an injunction, Defendants will continue infringing on Plaintiff's products because they have done so willfully and failed to appear in this suit.  *See Kelly Toys Holdings, LLC v. Airpods Pro Store*, 2022 WL 2801077, at *8 (S.D.N.Y. July 18, 2022) (citing *Lauratex Textile Corp.. v. Allton Knitting Mills Inc.*, 519 F. Supp. 730, 732 (S.D.N.Y. 1981)).  Third, the balance of hardships favors the Plaintiff because "the Defaulting Defendants have not identified any hardships for the Court to consider—nor could they."  *Spin Master*, 463 F. Supp. 3d at 376.  "It is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product."  *WPIX, I8nc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) (citation omitted).  Lastly, a permanent injunction would benefit the public interest because "the public has an interest  . . . in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality."  *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010).  In aggregate, these factors establish that Plaintiff is entitled to a permanent injunction against Defendants, enjoining Defendants and those acting in active concert[3] with Defendants from:

---

[3] The Court modifies Plaintiff's proposed default judgment order to say "acting in active

- Infringing, contributing to the infringement of, or inducing infringement of the Patents-in-Suit.

- Copying, distributing, altering, displaying, and/or selling the Karmagreen Works.

- Using any copy or colorable imitation of the TIANAA Marks, as described in this opinion.

## CONCLUSION

For the reasons stated herein, the motion for a default judgment is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. No. 20.


SO ORDERED.

Dated: March 29, 2024
      New York, New York               _____
                                         LEWIS J. LIMAN
                               United States District Judge

---

concert" rather than "acting in concert" to be consistent with the language in Federal Rule of Civil Procedure 65(d)(2).  *See* Dkt. No. 23, at 2.